UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES ANTHONY WILLIAMS,

                Plaintiff,

     v.

BRUCE C GAGE, et al.,

                Defendants.

Case No. C18-0218-JCC-MAT

REPORT AND RECOMMENDATION

## I. INTRODUCTION

Plaintiff is a state prisoner who is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action against 20 employees of the Washington State Department of Corrections ("DOC"), most of whom work at the Monroe Correctional Complex ("MCC"). Plaintiff is currently housed at the MCC in the Special Offender Unit ("SOU"). Currently before the Court are six motions plaintiff has filed. (Dkts. 76, 77, 89, 91, 93, 99.) These motions seek summary judgment, disclosure of evidence, and an order requiring defendants to take certain actions related to plaintiff's access to his legal property and legal materials. Defendants oppose the motions (Dkts. 78, 82, 95, 101), and plaintiff has filed reply briefs (Dkts. 79, 92, 100).

Having considered the parties' submissions, the balance of the record, and the governing

REPORT AND RECOMMENDATION - 1

1  law, the Court recommends that plaintiff's motions be DENIED.

## II. BACKGROUND

By way of background, the Court summarizes the claims plaintiff makes in each of his motions, the relief he requests, and the evidence he has submitted to the Court.[1]

A.  Docket Nos. 76 and 77

The Court addressed some of the claims plaintiff raises in these motions in its September 5, 2019 order but deferred ruling on plaintiff's complaints regarding access to his legal materials, request for injunctive relief, and motion for summary judgment. (Dkt. 80.) Plaintiff claims the MCC's law librarian refuses to e-scan his pleadings; defendants are withholding access to his legal materials; defendants' attorneys are obstructing justice; defendants refuse to give him copies of orders from the Court; prison staff at the Washington State Penitentiary ("WSP") confiscated an amended complaint he was drafting when they transferred him to the infirmary there; WSP staff stopped feeding him in March 2019 and refused to give him blankets; he did not receive any legal materials for 28 days after his transfer from the WSP to MCC in May 2019; WSP staff put him on paper and pen restriction in March and April 2019; and he has been unable to file follow-up discovery requests through no fault of his own. (*See generally* Dkts. 76-77.) He also discusses at length facts that are not part of this lawsuit and seeks summary judgment on these issues. (*See* Dkt. 77 at 9-13.)

As relief, plaintiff seeks summary judgment and a preliminary injunction ordering: (1) defendants to return all his legal materials to him, including his original complaint and an amended complaint he was in the process of drafting when it was confiscated from him; (2) disclosure of evidence related to claims not raised in this lawsuit; and (3) Jack Werner, Superintendent of the

---

[1] A detailed summary of the factual allegations in plaintiff's complaint can be found at Docket No. 43.

REPORT AND RECOMMENDATION - 2

MCC-SOU, to order the law librarian to e-scan his documents and supply him with legal materials, including examples of interrogatories and requests for production. (*See generally* Dkts. 76-77.)

After the motions were fully briefed (*see* Dkts. 78 (Resp.), 79 (Reply)), the Court expressed concern regarding plaintiff's alleged inability to access his legal materials and ordered defendants to file a supplemental response addressing the location of all of plaintiff's legal property held by the DOC, the amount/types of legal property held at each location, the formal efforts plaintiff has made to acquire his legal property, the reasons plaintiff's requests have been denied, and any further steps plaintiff must take to acquire his property through DOC channels. (Dkt. 80 at 2.) The Court also set a deadline for plaintiff to file a supplemental reply. (*Id.*)

Defendants subsequently submitted declarations from DOC employees establishing that after plaintiff's most recent transfer from the WSP to the MCC-SOU, WSP staff sent all of plaintiff's remaining property (14 boxes) to the MCC, that the MCC received 12 boxes and staff consolidated those into eight boxes, and that those eight boxes are currently stored in the MCC-SOU property room.[2] (*See* Dkts. 85, 86.) Defendants also submitted the declaration of Miriam Dominique-Kastle, the MCC law librarian. (Dkt. 87.) Ms. Dominique-Kastle explains that SOU inmates may send her a request for access to legal documents to litigate their open and active cases. (*Id.* at ¶ 3.) She attests:

> Williams has made no requests through my office to obtain access to any of his legal property. I have even gone out to Williams' housing unit to speak with him

---

[2] Defendants do not attempt to explain why WSP shipped out 14 boxes and MCC only received 12. Plaintiff raises this issue in Docket No. 93. This is not a matter for federal court, however. An unauthorized intentional deprivation of a prisoner's property does not constitute a violation of the Due Process Clause if a meaningful post-deprivation remedy for the loss is available under state law. *Hudson v. Palmer*, 468 U.S. 517, 534 (1984); *see also Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002). Washington State provides a meaningful post-deprivation remedy for the intentional or negligent loss of property by state agents and employees. In Washington, a person may file a tort claim against the State for unlawful loss or destruction of inmate property. RCW 72.02.045; RCW 4.92.090-100; *see Franklin v. State Welfare Division*, 662 F.2d 1337, 1345-46 (9th Cir. 1981); *see also Jeffries v. Reed*, 631 F. Supp. 1212, 1216 (E.D. Wash. 1986). As plaintiff has an adequate state post-deprivation remedy and may file a tort claim for the loss of his personal property in the Washington State Courts, he cannot bring a federal claim for lost or stolen property.

REPORT AND RECOMMENDATION - 3

      and explain the process for obtaining his legal property. During those conversations, Williams gets very confrontational. Although Williams may be limited in the amount of legal property he can retain in his cell, he still has the ability to request his legal property through my office. He has never utilized this option.

(*Id.* at ¶ 4.)

In his supplemental reply, plaintiff complains that defendants should cooperate with his clearly expressed desire to access his legal documents and give him his property. (*See* Dkt. 92.) He summarizes the motions he filed the same day as his supplemental reply and refers the Court to the exhibits he submitted in support of those motions to show his efforts to obtain his legal documents and refute Ms. Dominique-Kastle's claim that he has not requested his legal property through her office. (*Id.*) He also alleges instances beginning in 2014 of Ms. Dominique-Kastle stealing his legal documents. (*Id.*)

B.    <u>Docket No. 89</u>

Plaintiff alleges defendants have restricted his access to the law library and legal materials, especially information regarding SHU syndrome and antipsychotic medication. (*See generally* Dkt. 89.) Plaintiff contends that Disability Rights Washington ("DRW"), a private nonprofit organization that provides free services to people with disabilities, is the only place he can get this information and that defendants require him to preschedule his calls to DRW, which limits him to one or two calls per month. (*Id.*) According to plaintiff, he needs to call DRW every week and that a DRW attorney told him he could call any time. (*Id.*) Plaintiff claims most SOU inmates are allowed to call DRW five days a week. (*Id.*) He asks the Court to order Superintendent Werner to (1) allow him to call DRW five days a week; (2) take him to the law library once a week so he can get legal supplies that Ms. Dominique-Kastle refuses to send him; and (3) allow him access to the e-law library for 28 hours a week, the same as inmates in general population. (*Id.*)

REPORT AND RECOMMENDATION - 4

Plaintiff attaches 36 pages of exhibits to his motion. (Dkt. 89-1.) These documents include:

- A June 27, 2019 letter to plaintiff from DRW attorney Rachael Seevers;
- A May 8, 2019 kite to Ms. Dominique-Kastle requesting addresses for various entities, priority law library access, a list of legal forms and brief bank materials available, and a list of all books in the law library;
- A May 13, 2019 kite to Ms. Dominique-Kastle requesting legal supplies;
- A May 20, 2019 grievance complaining about Ms. Dominique-Kastle's failure to respond to the May 8 and May 13, 2019 kites;
- Another May 20, 2019 grievance stating plaintiff's intent to seek court assistance to compel DOC to return his legal property;
- A May 27, 2019 grievance complaining that the MCC-SOU property officer refused to get the other DOC institutions to send him his property;
- Another May 27, 2019 grievance claiming Ms. Dominique-Kastle failed to send him the legal supplies he requested or pick up his documents for e-scanning to the Court, and DOC's response that it investigated his complaints and the law librarian did not receive any kites from him in May 2019;
- A June 21, 2019 kite to Ms. Dominique-Kastle requesting that she e-scan documents for court filing and her response that she visited plaintiff's cell front on June 27, 2019; and
- An undated note from plaintiff indicating Ms. Dominique-Kastle brought him 50 pages of paper and three envelopes nearly two months after he submitted his requests for legal

REPORT AND RECOMMENDATION - 5

supplies.³

(*See* Dkt. 89-1.)

Plaintiff also filed a reply in which he alleges all his telephone privileges have been revoked and DOC has told him to write to DRW. (Dkt. 100.) Plaintiff reiterates his complaints that Ms. Dominique-Kastle continues to refuse to give him legal supplies and states he is seeking a preliminary injunction requiring defendants to give him legal supplies. (*Id.*)

C.  Docket No. 91

Plaintiff complains that defendants regularly transfer him between institutions and steal his legal documents to prevent him from litigating his cases. (*See generally* Dkt. 91.) He also alleges he sent a kite to Ms. Dominique-Kastle but she never responded. (*Id.*) Plaintiff asks the Court to order defendants to return all his property to him and let him keep it in his cell, and if he is transferred, to ensure all his property is transferred on the same bus and allowed to be stored in his cell at the new institution.⁴

Plaintiff attaches 78 pages of exhibits to this motion, claiming the exhibits show he has requested his property through official channels. (Dkt. 91-1.) These documents include:

- A May 10, 2019 kite to the MCC custody officer requesting the return of his legal property transferred from the WSP;

- A May 26, 2019 kite to the MCC property officer complaining that he had not received his property from the WSP, and a June 17, 2019 response informing him that he would have to kite the law librarian for his legal property, which the MCC had not yet

---

³ The Court does not detail every document in the exhibit, only those potentially relevant to plaintiff's motions. Additionally, although the Court reviewed the original exhibits plaintiff mailed to the Clerk's office, some of them were illegible.

⁴ Plaintiff also claims that in Case No. C10-5121-MJP, the court ordered relief similar to what he requests here. The Court has reviewed the docket in that case, and plaintiff's claim is incorrect.

REPORT AND RECOMMENDATION - 6

received;

- A May 27, 2019 grievance alleging the MCC property officer refused to request his property, and DOC's August 5, 2019 response that the MCC had received his property and he needed to follow proper channels to access it;

- A May 30, 2019 kite to the MCC-SOU property officer demanding that the officer obtain his legal property from the WSP, and the officer's response that plaintiff had not submitted a postage transfer requesting his property be shipped;

- A July 31, 2019 kite to Superintendent Warner complaining about his multiple transfers over the years and the resulting separation from his legal property;

- An August 26, 2019 kite to Ms. Dominique-Kastle requesting all his legal property;

- A September 9, 2019 kite to Ms. Dominique-Kastle asking for an opportunity to inventory his legal property; and

- A September 10, 2019 kite to Ms. Dominique-Kastle complaining that she refused his in-person attempts to discuss inventorying and accessing his legal property, and requesting one box of property.

(Dkt. 91-1.)

D.   Docket No. 93

Plaintiff reiterates his request to access all his property. (*See* Dkt. 93.) He also asks the Court to order Superintendent Warner to file weekly declarations identifying the location of his property. (*Id.*)

E.   Docket No. 99

Plaintiff asks the Court to order Superintendent Warner to let him walk to the law library so he can watch Ms. Dominique-Kastle make copies of exhibits to ensure she does not destroy his

REPORT AND RECOMMENDATION - 7

documents. (*See* Dkt. 99.)

## III. DISCUSSION

To summarize, plaintiff asks the Court to (1) grant him summary judgment on claims not raised in this case; (2) order the disclosure of evidence unrelated to this case; (3) allow him to access his legal property; (4) order defendants to return all his property to him and allow him to keep it in his cell, even if he is transferred; and (5) order Superintendent Werner to order Ms. Dominique-Kastle to e-scan his documents and give him legal supplies and materials, take him to the law library once a week so he can get legal supplies, allow him to access the e-law library 28 hours per week, file weekly declarations regarding the location of his property, allow him to walk to the law library when he has documents to copy, and allow him to call DRW five days per week. As discussed below, plaintiff is not entitled to any of the relief he requests.

Plaintiff's first two requests are easily denied. Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Plaintiff seeks summary judgment based on facts unrelated to the claims he raises in this case, and therefore does not meet the applicable standard. Likewise, plaintiff's request for disclosure of evidence should be denied because he seeks evidence unrelated to this case.

With respect to his third request, plaintiff has not submitted evidence establishing that he has followed proper DOC channels to access his legal property. Although plaintiff initially struggled to have his property transferred to the MCC, the evidence establishes all his property is now in the MCC-SOU property room. Ms. Dominique-Kastle has explained to plaintiff what he must do to obtain his legal property. Defendants do not lay out these requirements for the Court, but it appears each of plaintiff's documents must be clearly labeled with a title and plaintiff must

send a kite to Ms. Dominique-Kastle requesting the specific documents he wants to review. (*See* Dkt. 87-1 at 7-8.) Based on plaintiff's submissions, it does not appear he has inventoried his legal property or labeled his documents so he can properly request them. There is evidence plaintiff has submitted a kite to Ms. Dominique-Kastle requesting an opportunity to inventory his property, but there is no evidence regarding her response or whether plaintiff filed a grievance in an attempt to resolve the issue. Given this record, it is not appropriate at this time for the Court to intervene and order defendants to provide plaintiff with access to the legal property he needs to litigate this case. Plaintiff must follow the proper channels to request access to his property. Defendants, however, are encouraged to ensure plaintiff knows how he can obtain permission to inventory his legal property so he can properly request access to his documents.

It is also inappropriate for the Court to order the return of all plaintiff's property or to order Superintendent Werner to take the actions plaintiff requests. All of plaintiff's requests implicate prison administration. In addition, plaintiff's requests to keep all his property in his cell, access the e-law library a certain number of hours per week, walk to the law library to get supplies or have copies made, and to be allowed to call DRW also implicate the safety and security of the MCC. States have "traditionally been granted the widest latitude in the dispatch of [their] own internal affairs," *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (citations omitted), and this holding applies even more strongly in cases involving the administration of state prisons, *Turner v. Safley*, 482 U.S. 78, 85 (1987). Absent exceptional circumstances not present here, courts do not intervene in the day-to-day management of prisons. *See e.g.*, *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (prison officials entitled to substantial deference); *Sandin v. Connor*, 515 U.S. 472, 482-83 (1995) (disapproving the involvement of federal courts in the day-to-day management of prisons). Accordingly, plaintiff is not entitled to the relief he seeks.

The Court nevertheless notes the following. First, plaintiff has access to sufficient supplies to file many motions with the Court, and he has not shown that he has been denied access to legal supplies and materials in violation of DOC policy. If plaintiff believes he is being wrongly denied supplies and materials to which he is entitled, he should follow official DOC channels to resolve his issues. Second, although plaintiff complains about his inability to call DRW attorney Rachael Seevers, he is permitted to communicate with her via mail and in person. (*See* Dkt. 89-1 at 1 (letter from Ms. Seevers to plaintiff responding to a letter he wrote, attaching documents he requested, and noting an upcoming visit to the MCC to meet with him).) Plaintiff's claim that writing letters to Ms. Seevers is inadequate to obtain the assistance he needs does not establish exceptional circumstances. Finally, with respect to plaintiff's complaints regarding e-filing, the Court expects *both* the MCC-SOU and plaintiff to adhere to establish procedures regarding e-filing. If plaintiff follows the proper procedures, the law librarian should e-file his documents. Plaintiff has received 10 notices from the Court regarding his non-compliance with the prisoner e-filing initiative. The Court recommends that plaintiff be directed to follow the proper procedures to e-file his submissions to the Court, and if he does not, he should be directed to include a declaration and supporting evidence explaining his efforts to file properly and why he was unable to do so.

IV.  CONCLUSION

The Court recommends that plaintiff's motions (Dkts. 76, 77, 89, 91, 93, 99) be DENIED. A proposed order detailing this recommendation accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions

1  calendar for the third Friday after they are filed.  Responses to objections may be filed within

2  **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be

3  ready for consideration by the District Judge on **February 14, 2020**.

4  Dated this 23rd day of January, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11