UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES ANTHONY WILLIAMS,

                        Plaintiff,

            v.

BRUCE C GAGE, et al.,

                        Defendants.

Case No. C18-0218-JCC-MAT

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Plaintiff is a state prisoner who is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action against 20 employees of the Washington State Department of Corrections ("DOC"), most of whom work at the Monroe Correctional Complex ("MCC") in Monroe, Washington.  Plaintiff was recently transferred from the Special Offender Unit at the MCC to the Washington Corrections Center in Shelton, Washington.  Currently before the Court is plaintiff's 144-page motion for summary judgment in which he also asks the Court for copies of documents and for the appointment of counsel.  (Dkt. 102.)  Defendants oppose the motion.  (Dkt. 104.)  Plaintiff did not file a reply.  Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that plaintiff's motion be DENIED.

REPORT AND RECOMMENDATION - 1

1

## II.    BACKGROUND

2

The Court previously summarized the allegations in plaintiff's complaint as follows:

3

4

5

6

7

8

9

10

11

Plaintiff divides his complaint into 13 "grounds," most of which relate to a period when he was incarcerated at the Monroe Correctional Complex. In ground 1, he alleges that Dr. Gage and Dr. Rainer, who supervise DOC's mental health services, are a part of a conspiracy against him that began in 2015. (Dkt. 11 at 5.) He alleges that in October 2015, the doctors ordered that he be transferred out of a mental health unit and into an intensive management unit ("IMU") for the purpose of separating him from his legal materials. (*Id.*) He alleges that Dr. Gage and Dr. Rainer know that he suffers from "SHU-syndrome," which is caused by being housed in solitary confinement for long periods of time, and yet they still ordered that he be transferred to an IMU. (*Id.* at 7.) He identifies four other health care professionals who allegedly refused to recommend that he be transferred out of the IMU. (*Id.* at 8-9.) He alleges that when he arrived at the IMU, officers, whom he does not identify, violated his constitutional rights in various ways. (*Id.* at 6.) Plaintiff alleges that in this lawsuit, he is suing Dr. Gage and Dr. Rainer because they are the primary cause of him cutting himself on three different dates, as alleged below. (*Id.* at 8.) Plaintiff asserts claims under the First, Eighth, and Fourteenth Amendments, as well as the Americans with Disabilities Act, based on the above allegations. (*Id.*)

12

13

14

15

16

17

18

19

20

21

22

23

In ground 2, plaintiff alleges that on January 8, 2018, Classification Officer Collins and Sergeant Roos put him in a strip cell so they could take his legal materials, and as a result, he started cutting himself. (*Id.* at 10.) Plaintiff alleges that their actions violated his First, Eighth, and Fourteenth Amendment rights. (*Id.*) In ground 3, plaintiff alleges that on January 9, 2018, he informed Officer Cook, Sergeant Meek, and Lieutenant Mui that he was suicidal because he had not slept for several days due to the conditions of the strip cell where he was housed. (*Id.* at 11.) Allegedly, plaintiff started to cut himself, and Officer Cook, Sergeant Meek, and Lieutenant Mui let him continue all night. (*Id.* at 13.) Plaintiff alleges that in the morning, a physician's assistant came and put steri-strips on his wound. (*Id.*) Plaintiff identifies four other DOC employees who were present during this episode. (*Id.*) In ground 4, plaintiff alleges that on January 10, 2018, he started to cut himself again and also spread feces around his cell. (*Id.* at 15.) Plaintiff alleges that Officer Cook and Lieutenant Mui knew what was going on but would not strap him down to a bed, as he requested. (*Id.*) Plaintiff alleges that defendants violated the DOC's hygiene policy. (*Id.*) In ground 5, plaintiff alleges that on January 11, 2018, he was feeling suicidal because he had not slept or had a blanket for six days, so he covered the camera in his room with feces to get staff to strap him down to a bed. (*Id.* at 17-19.) He alleges that Officer Cook and Lieutenant Walters were aware of his actions. (*Id.* at 19.) Plaintiff alleges that around 2:00 a.m. on January 12, 2018, he got Officer Cook to write two emergency grievances for him, but no one properly responded to the grievances. (*Id.*) Plaintiff alleges that later that morning, Officer Simpson refused to give him breakfast, so plaintiff started cutting himself again,

REPORT AND RECOMMENDATION - 2

and then he was denied lunch. (*Id.* at 20-21.) Plaintiff identifies four other DOC employees who were aware of what was going on. (*Id.* at 20.) Plaintiff also alleges that Lieutenant Walters made him crawl through feces to get out of his cell even though he had a cut on his knee, and then later put him back in the same cell with feces on the ceiling. (*Id.* at 21.)

In ground 6, plaintiff alleges that on January 17, 2018, he was feeling suicidal and staff strapped him to a bed. (*Id.* at 22.) He alleges that this helped his mental health, but his counselor, Vilma Khoumpizay, and an unidentified doctor told him that he was going back to the IMU. (*Id.*) Plaintiff alleges that two officers physically moved him back to the IMU, and then he immediately started cutting himself. (*Id.*) In ground 7, plaintiff alleges that Brandi Blair, the grievance coordinator, would not let him file emergency grievances regarding cutting himself. (*Id.* at 24.) He claims that this violates his First, Eighth, and Fourteenth Amendment rights. (*Id.*)

In ground 8, plaintiff alleges that for the last five months, Sergeant Kleinman has refused to give him legal materials and law books that he needs to litigate this lawsuit. (*Id.* at 25.) In ground 9, plaintiff alleges that he filed a kite asking Sergeant Kleinman for legal materials and stating that he would sue the sergeant if he did not get any legal materials. (*Id.*) Plaintiff alleges that Sergeant Kleinman infracted him for this threat. (*Id.*) In ground 10, plaintiff alleges that Infraction Hearing Officer T. Olmsted-Fredrickson found plaintiff guilty of the infraction Sergeant Kleinman issued. (*Id.*) Plaintiff claims that he has a constitutional right to tell Sergeant Kleinman that the sergeant was violating his constitutional rights and that he will sue. (*Id.*) Plaintiff claims in grounds 8 through 10 that Sergeant Kleinman and Officer Olmsted-Fredrickson violated his First, Eighth, and Fourteenth Amendment rights. (*Id.*)

In ground 11, plaintiff alleges that law librarian Miriam Dominique-Kastle refuses to give him the legal materials he needs to litigate this case. (*Id.* at 26.) In ground 12, plaintiff alleges that Superintendent Jack Warner refuses to order Property Officer Bowling and Classification Officer Collins to give him his legal records, which impedes his ability to litigate this case. (*Id.*) In ground 13, plaintiff alleges that Officer Bowling refuses to give him his legal records, which he needs to litigate this lawsuit. (*Id.*)

As relief, plaintiff seeks an order requiring the DOC to transfer him out of the IMU, document that he has "SHU-syndrome," and provide him therapy. (*Id.* at 4.) He also seeks monetary damages for his physical and mental injuries. (*Id.*)

(Dkt. 43 at 2-4 (footnote omitted).)

REPORT AND RECOMMENDATION - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

III.    DISCUSSION

A.    Requests for Documents

Plaintiff the Court to order counsel for defendants to provide him with a courtesy copy of his complaint and the attached exhibits, a total of 81 pages (Dkt. 11).[1]  (Dkt. 102 at 1.) Alternatively, he asks the Court to provide him with the requested copies.  (*Id.*)  The Court is not aware of a legal basis upon which to order defendants to provide plaintiff with a copy of his own complaint.  Furthermore, both this Court and defendants have already provided plaintiff with copies of his complaint.  (*See* Dkt. 59 at 4 (12/6/18 order directing clerk to provide courtesy copy of complaint and attached exhibits to plaintiff); Dkt. 63 at 2 (1/22/19 response brief by defendants indicating that counsel mailed plaintiff a copy of his complaint in January 2019); Dkt. 65 (2/27/19 order denying plaintiff's request for copy of complaint as moot because defendants' counsel had already provided him a copy).)  In September 2019, the Court informed plaintiff that if he would like any additional records, "he must pre-pay, at a rate of $0.50 per page, for the number of pages he requests.  He may direct requests for specific documents to the Clerk's office.  The Clerk's office will inform him of the total charge for the pages and mail the requested documents after plaintiff submits payment."  (Dkt. 80 at 3.)  Because the Court and defendants' counsel have already provided plaintiff with the copies he seeks and the Court has informed plaintiff that he must pay for additional copies of documents, plaintiff's request for a copy of his complaint and the attached exhibits should be DENIED.

B.    Motion for Appointment of Counsel

Generally, a person has no right to counsel in a civil action.  *See Campbell v. Burt*, 141 F.3d 927, 931 (9th Cir. 1998).  In certain "exceptional circumstances," the Court may request the

---

[1] Plaintiff also asks the Court for a copy of Docket 80, which the Clerk provided to him upon receiving his motion.  Accordingly, this request is moot.

REPORT AND RECOMMENDATION - 4

1    voluntary assistance of counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1).  *Agyeman*

2    *v. Corrections Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004).  When determining whether

3    "exceptional circumstances" exist, the Court considers "the likelihood of success on the merits as

4    well as the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the

5    legal issues involved."  *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

6           Plaintiff recognizes that he does not have an inability to articulate his claims or grasp the

7    legal issues "because this is a simple lawsuit with simple legal principles."  (Dkt. 102 at 14-15.)

8    He argues that he is entitled to the appointment of counsel solely because he is likely to succeed

9    on the merits.  (*Id.* at 15.)  At this point, however, the Court cannot conclude that plaintiff is likely

10   to succeed on any of his claims.  As discussed below, plaintiff has provided a lengthy recitation of

11   the facts from his perspective, but he has not submitted any evidence under penalty of perjury.  In

12   addition, he has not identified which provisions of the Constitution or federal law he believes have

13   been violated.  Considering both plaintiff's ability to articulate his claims and the likelihood of

14   success, the Court concludes that plaintiff has not demonstrated "exceptional circumstances" that

15   justify the appointment of counsel at this time and recommends that his request for pro bono

16   counsel be DENIED.

17   C.     Motion for Summary Judgment

18          1.     *Legal Standard*

19          Summary judgment is appropriate when the "movant shows that there is no genuine dispute

20   as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

21   56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The central issue is "whether

22   the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

23   one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the moving party bears the burden at trial, it can meet its initial burden by presenting evidence sufficient to demonstrate that no reasonable trier of fact could find for the nonmoving party; the evidence presented must establish beyond controversy every essential element of the claim. *Southern Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888-89 (9th Cir. 2003). If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute. *Id.* at 252.

In ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 248.

2.    *Discussion*

Plaintiff's motion for summary judgment focuses on the events alleged in Grounds 2 through 6 when he cut himself over the course of several days. There are several deficiencies with the motion that preclude summary judgment. First, the motion is 144 pages long, well beyond the 24 pages allowed by the Local Rules, and plaintiff did not seek leave from the Court to file an overlength motion. *See* W.D. Wash. Local Rules LCR 7(e)(3) (24-page limit for summary judgment motions), 7(e)(6) (court may refuse to consider pages filed over the limit), 7(f) (setting forth requirements for requesting leave to file overlength brief). Second, even if the Court were

to consider the entirety of the motion, plaintiff fails to meet his summary judgment burden. Most of the motion is comprised of a lengthy recitation of the facts that plaintiff believes entitle him to relief, but he does not support the motion with affidavits, declarations or other evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). The motion itself is not evidence, and even if the Court were to liberally construe it as such, plaintiff does not sign it under penalty of perjury. (*See* Dkt. 102 at 144.) Plaintiff also fails to identify the legal basis for his claims, i.e., he does not identify which provisions of the Constitution or federal law he believes were violated. As the movant, plaintiff must show both that the material facts are undisputed and explain how those facts entitle him to judgment as a matter of law. It is not the Court's job to tie together the facts and the law; that is plaintiff's obligation as the moving party, which he has not satisfied. For these reasons, plaintiff's motion for summary judgment should be DENIED.

## IV.    CONCLUSION

The Court recommends that plaintiff's motion (Dkt. 102) be DENIED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be

ready for consideration by the District Judge on **May 29, 2020**.

Dated this <u>5th</u> day of May, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8