UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES ANTHONY WILLIAMS,

Plaintiff,

v.

BRUCE C GAGE, et al.,

Defendants.

Case No. C18-0218-JCC-MAT

ORDER

This is a 42 U.S.C. § 1983 prisoner civil rights action. There are five motions currently pending: (1) Defendants' motion for summary judgment (Dkt. 122), noted for July 31, 2020; (2) Plaintiff's motion asking the Court to appoint counsel and "order the Defendants to give me all my legal documents" associated with this action (Dkt. 130), noted for July 24, 2020; (3) Plaintiff's motion asking the Court to accept his overlength motion and to order Defendants' counsel to send him "key documents associated with this case," among other things (Dkt. 131), noted for August 14, 2020 (Dkt. 131); (4) Defendants' motion for an extension of time to respond to Docket 130 (Dkt. 132), noted August 7, 2020; and (5) Plaintiff's motion to add supplemental exhibits to Docket 130 (Dkt. 133), noted for August 21, 2020. On August 10, 2020, Defendants filed a response to Plaintiff's motions asserting an inability to access his legal materials. (Dkt. 134.) Having

considered the parties' submissions, the balance of the record, and the governing law, the Court finds and ORDERS:

(1) Procedural Motions

The parties bring several procedural motions that may be resolved without substantive discussion:

First, Defendants' motion for extension of time to respond to Plaintiff's claims in Docket 130 (Dkt. 132) is GRANTED. The Court will accept Defendants' response (Dkt. 134) as timely filed.

Second, Plaintiff's motion to add supplemental exhibits in support of his other pending motions (Dkt. 133) is GRANTED. The Court will consider Plaintiff's submissions when assessing his pending motions.

Third, although requests to file overlength motions are disfavored, Plaintiff's request that the Court accept his overlength motion (Dkt. 131) is GRANTED.

Fourth, Plaintiff's request for an extension of time to respond to Defendants' motion for summary judgment (Dkt. 130 at 24, 77) is GRANTED. Given the ongoing issues with Plaintiff's access to his legal property and legal research materials, the Court extends the deadline for Plaintiff to file his response brief to **October 26, 2020**. Defendants may file a reply by **October 30, 2020**.

Fifth, Plaintiff's request for a copy of the docket in this action (Dkt. 131 at 12, 77) is GRANTED. The Court will direct the Clerk to send him a copy.

(2) Plaintiff's Access to His Legal Property

Plaintiff's ability to access his legal property has been an ongoing issue throughout this litigation. Most recently, the Honorable John C. Coughenour directed Plaintiff to follow the proper channels within the Washington State Department of Corrections ("DOC") to access his legal

property. (Dkt. 109 (3/2/2020 Order) at 1.) Judge Coughenour encouraged Defendants to ensure Plaintiff knows how he can obtain permission to inventory his legal property so he can properly request access to his stored documents. (*Id.*)

In Docket 130, Plaintiff alleges that Defendants and their agents have systematically stripped him of all court documents. (Dkt. 130 at 2.) Plaintiff claims that he has between nine and fourteen boxes of legal property in storage at the Washington Corrections Center ("WCC") where he is currently housed, but WCC staff have not allowed him to access any of it even though he has sent multiple kites and followed DOC protocol. (*Id.* at 16, 20.) Plaintiff also claims that Defendants confiscated his copy of the complaint in this action, as well as the discovery Defendants' counsel produced to him. (*Id.* at 19.) Plaintiff asks the Court to order the DOC to give him all of his legal property. (*Id.* at 22.)

In Docket 131, Plaintiff recounts some of the history of his difficulties gaining access to his legal property. (Dkt. 131 at 2-10.) He complains that the Court denied as moot his motion to have Defendants transfer all of his legal property to him in the WCC-IMU, arguing that Defendants had his property sent to the WCC but not directly to his cell as he requested. (*Id.* at 17.) Plaintiff reasserts his claim in Docket 130 that he has followed the proper procedures to access his legal property but has been denied. (*Id.* at 22.) He explains that inmates must inventory their stored legal property, but he has been denied an opportunity to do so. (*See id.* at 43-46.) He asserts that it would take him a very long time to create an index because of how many documents he has, and he claims the DOC's procedures effectively prevent him from accessing his stored legal property. (*See id.* at 43-46.) He also claims that DOC staff shuffle inmates' documents, further preventing inmates from accessing their property. (*Id.* at 46.) Plaintiff asks the Court (or counsel for Defendants) to (a) send him a copy of his complaint and a copy of Defendants' discovery materials; (b) order

Defendants' agents to allow him to inventory his legal property boxes and retrieve the documents relevant to this case; and (c) order Defendants' agents to allow him access to his legal property boxes. (*See id.* at 75-78, 80-81.)

Plaintiff also submits several of his own declarations. (*See* Dkt. 131-6.) He attests that "[D]efendants have stolen or refuse to return to me my complaint and that they have placed it in my 9-14 boxes of documents which they are keeping from me . . . ." (*Id.* at 2.) Plaintiff attests that Defendants have also taken all of his discovery documents and legal research, placed these documents in his stored boxes, and refused to return them to him. (*Id.* at 8.) Finally, he attests that he cannot respond to Defendants' motion for summary judgment because he no longer remembers the detail of the claims he made in his complaint, he does not have Defendants' discovery documents, and he does not have access to caselaw authorities. (*Id.* at 9.)

In response, Defendants submit the declarations of Plaintiff's WCC Classification Counselor, Chad Hostetler, and the WCC's law librarian, John Thompson.[1] (Dkt. 135 (Hostetler Decl.); Dkt. 136 (Thompson Decl.).) Mr. Hostetler and Mr. Thompson attests to the following. To maintain safety and security, an inmate like Plaintiff who is in restricted housing is permitted to have one 10" x 12" x 18" box of legal documents/paper in his cell unless he obtains permission from the Superintendent to keep two boxes. (Dkt. 135 ¶ 3 (citing DOC Policy 320.255).) If an inmate needs access to additional materials that he has in storage, he may submit a kite to the property officer and ask that one of his in-cell boxes be swapped out for one of his stored boxes. (*Id.*; Dkt. 136 ¶ 3.) Inmates are expected to label and keep organized their legal property. (Dkt. 136 ¶ 4.) This allows staff to determine which property qualifies as legal property and allows inmates to easily retrieve their legal property for a particular case. (*Id.*)

[1] Neither declarant is a defendant in this action.

Plaintiff currently has two boxes of legal property in his cell and a number of other boxes in the IMU storage. (Dkt. 135 ¶ 3; Dkt. 136 ¶ 7.) Plaintiff has repeatedly asked to have all his property boxes in his cell at one time, claiming he needs all the boxes at once because they are disorganized. (Dkt. 135 ¶ 5.) According to Mr. Hostetler, Plaintiff's request cannot be accommodated because it violates DOC policy, there is insufficient space in his cell for all his boxes, there are insufficient resources to move and search his many boxes, other individuals are not afforded this accommodation, and it would create safety and security issues as the boxes could be used to barricade the door or block a window. (*Id.* ¶ 5.) Nevertheless, although inmates are expected to keep their property organized, WCC "staff have discussed a plan and are working to allow Mr. Williams the opportunity to go through and organize his property in a secured room other than his cell." (*Id.*) Mr. Hostetler hopes this will allow Plaintiff "to better know what legal property he has so that he can request specific boxes to have in his cell." (*Id.*)

Having carefully reviewed the parties' submissions, the Court DENIES Plaintiff's request that he be allowed access in his cell to all his boxes of legal property; this would violate DOC policy and pose a security risk. The Court DEFERS ruling on the remainder of Plaintiff's requests related to accessing his legal property. WCC staff are working to implement a plan that will allow Plaintiff to review his stored property so he can ask for specific boxes to be brought to his cell, but as of the date Mr. Hostetler and Mr. Thompson executed their declarations, the plan had not yet been implemented. Accordingly, **by September 11, 2020**, the parties shall each file their own status report regarding Plaintiff's access to his legal property, addressing the steps WCC staff have taken to assist Plaintiff with organizing and accessing his stored property, the steps Plaintiff has taken to comply with DOC policies and/or WCC staff requests regarding accessing his stored property, any additional steps Plaintiff must take to comply with the relevant DOC policies and/or

WCC staff requests, and any other relevant information. It is apparent that all parties wish to move this litigation forward, and the Court will endeavor to resolve the access issue before requiring Plaintiff to respond to Defendants' motion for summary judgment. The Court appreciates the efforts WCC staff have taken thus far and expects the parties to continue to act in good faith and in accordance with DOC policies to facilitate Plaintiff's reasonable access to his stored legal materials that are relevant to this lawsuit.[2]

(3) Plaintiff's Access to Legal Research Materials

Plaintiff alleges that Defendants and their agents are preventing him from accessing legal research materials. (*See* Dkt. 130 at 4.) Plaintiff explains that inmates in solitary confinement must conduct legal research on computers, but he is computer illiterate and DOC staff have refused to sit down and teach him how to use a computer and conduct legal research, which he believes he could learn if provided some instruction. (*Id.* at 4.) Plaintiff also claims that he is only allowed 1-2 hours of access to a computer every 30 to 60 days, which is insufficient for his needs. (*Id.* at 6.) Plaintiff asks the Court to order Defendants' agents to allow him adequate access to caselaw by providing him with printed caselaw from the law library, indexes of caselaw by topic, law books, instruction on how to use the legal research computer, and adequate time on the law library computer. (*See* Dkt. 131 at 80.)

Defendants respond to these claims with the following evidence from Mr. Hostetler and Mr. Thompson. Inmates in the WCC-IMU have access to the IMU law library, which has two legal computers with access to the Lexis Nexis legal database, DOC policies, and WCC Operational Memorandums, among other resources. (Dkt. 135 ¶ 4; Dkt. 136 ¶ 5.) To access the law library, an

[2] The Court is not persuaded by Defendants' argument that Plaintiff seeks injunctive relief that is beyond the scope of this lawsuit. (*See* Dkt. 134 at 5-6.) Rather than seeking injunctive relief, Plaintiff is attempting to resolve logistical and procedural matters that are within the DOC's control and that go to his ability to meaningfully respond to Defendants' motion for summary judgment.

inmate must send a kite to the IMU Sergeant, who will add the individual to the law library clipboard. (Dkt. 135 ¶ 4.) Inmates may access the law library for up to four hours per week. (Dkt. 135 ¶ 4.)

Plaintiff has submitted a number of kites to Mr. Thompson requesting law library access, but library access is managed and scheduled by IMU staff, not Mr. Thompson. (Dkt. 136 ¶ 8.) Plaintiff has only filed one proper request to access the law library, and he was provided access on April 6, 2020. (Dkt. 135 ¶ 4.) Plaintiff has also submitted kites to Mr. Thompson asking for information regarding the library computer; in response, Mr. Thompson sent him materials regarding the Lexis Nexis database. (Dkt. 136 ¶ 8.) Mr. Thompson has also spoken with Plaintiff in person, who reported he does not know how to use a computer; Mr. Thompson asked if there was any caselaw Plaintiff wished to have printed. (*Id.*) Mr. Thompson also intends to work with Plaintiff one-on-one to assist him with becoming familiar with a computer. (*Id.*) Mr. Thompson does not have much free time but believes he can work with Plaintiff for 30 minutes a week for a limited period of time. (*Id.*) Mr. Thompson and IMU staff are communicating to develop a plan to assist Plaintiff in this way. (*Id.*)

Having carefully considered the parties' submissions, the Court DEFERS ruling on Plaintiff's motions regarding access to the law library. In the parties' status reports due September 11, 2020, *see supra* ¶ 2, the parties shall also address Plaintiff's access to the law library, including but not limited to whether he has been able to properly request and obtain access, whether he has requested and received printed legal materials from Mr. Thompson, and whether he and Mr. Thompson met for one-on-one learning about computer and online legal research database. Again, the Court appreciates the efforts of WCC staff, particularly Mr. Thompson, and expects the parties to continue acting in good faith and in accordance with DOC policy.

   (4) Plaintiff's Motion to Appoint Counsel

Generally, a person has no right to counsel in a civil action. *See Campbell v. Burt*, 141 F.3d 927, 931 (9th Cir. 1998). In certain "exceptional circumstances," the Court may request the voluntary assistance of counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1). *Agyeman v. Corrections Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). When determining whether "exceptional circumstances" exist, the Court considers "the likelihood of success on the merits as well as the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

The Court has denied several motions for appointment of counsel, most recently on June 4, 2020. (Dkt. 118 (6/4/2020 Order adopting R & R at Dkt. 114).) In doing so, the Court noted that Plaintiff recognized he does not have an inability to articulate his claims or grasp the legal issues "because this is a simple lawsuit with simple legal principles." (Dkt. 114 at 3 (quoting Dkt. 102 at 14-15).) The Court further reasoned that Plaintiff had not shown a likelihood of success on the merits. (*Id.*)

Plaintiff now argues that the Court should appoint counsel because he has no access to legal research materials, DOC staff are preventing him from accessing his legal materials, he is computer illiterate and DOC staff have refused to help him learn how to use a computer and conduct legal research, and his mental health issues interfere with his ability to litigate this action. (*See* Dkt. 130 at 1, 4, 12, 23; Dkt. 131 at 33, 80-81; Dkt. 133 at 12.) He also asserts that the court in *Williams v. Sinclair*, No. 19-5045-BHS-TLF (W.D. Wash.), recently appointed counsel because he is mentally ill, in solitary confinement, mails everything to the court rather than e-filing, and has no access to caselaw. (Dkt. 131 at 57-58 (citing *Williams*, Dkt. 30).) He contends that these

same conditions are present in this case, and therefore the Court should appoint counsel. (*Id.* at 58-59.)

Plaintiff's request for the appointment of counsel is DENIED. Plaintiff has not shown a likelihood of success on the merits and he has a strong intellectual grasp of his claims despite his mental health difficulties. His primary challenge is conducting legal research in the law library, but Mr. Thompson is arranging one-on-one training for him and also has offered to print caselaw for Plaintiff. Furthermore, the court in *Williams* has not yet appointed counsel, but even if it does, it would not mean that counsel is warranted here. Exceptional circumstances require consideration of both the likelihood of success and the plaintiff's ability to articulate his claims pro se, and neither element is currently satisfied in this case.

(5) Plaintiff's Additional Requests

Plaintiff raises a few additional issues in his motions. First, he asks the Court to explain Docket 107-1. (Dkt. 131 at 1, 10.) Docket 107-1 is the Court's proposed order for Judge Coughenour adopting the Report and Recommendation filed at Docket 107. Judge Coughenour was not required to adopt the proposed order; the Court simply provided it to him to use if he agreed with the Report and Recommendation.

Second, Plaintiff asks the Court to explain why it did not previously find that he had followed the proper procedures to access his legal material while he was at the MCC. (*See* Dkt. 131 at 11-14, 40-44,76-77.) The current issue before the Court is Plaintiff's ability to access his legal property now that he is at the WCC. The Court declines to revisit its previous recommendation to Judge Coughenour regarding Plaintiff's access while at the MCC.

Third, Plaintiff asks the Court to consolidate this action with *Williams v. Sinclair*, No. 19-5045-BHS-TLF (W.D. Wash.). (Dkt. 131 at 59-60, 81.) The Court has broad discretion to

consolidate cases that involve common questions of law and fact. *See Pierce v. Cty. of Orange*, 526 F.3d 1190, 1203 (9th Cir. 2008). In determining whether consolidation is warranted, courts look to the existence of common questions of law or fact and weigh the interests of judicial economy against any delay or prejudice that might result. *See In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987); *Monolithic Power Systems, Inc. v. O2 Micro Intern. Ltd.*, No. 04-2000, 2006 WL 2329466, *1 (N.D. Cal. Aug. 9, 2006) (granting consolidation where common questions of law and fact exist and judicial economy would be served). In *Williams*, Plaintiff brings federal and state constitutional claims against senior DOC administrators, challenging the DOC's Disruptive Hygiene Behavior Protocol and requesting that the protocol be eliminated. *See Williams*, Dkt. 30 at 1-2. Plaintiff brings different claims in this action and seeks different relief. (*See* Dkt. 43 at 2-4 (8/29/2018 R & R summarizing claims).) Thus, the cases do not involve common questions of law and fact. Even if there are common questions, judicial economy weighs against consolidation as the cases are on different procedural tracks. Accordingly, Plaintiff's request to consolidate is DENIED.

(6) The Clerk is directed to RE-NOTE Defendants' motion for summary judgment (Dkt. 122) for October 30, 2020; RE-NOTE Plaintiff's motions (Dkts. 130, 131) for September 11, 2020; send Plaintiff a copy of the docket; and send copies of this order to the parties and to the Honorable John C. Coughenour.

Dated this 26th day of August, 2020.

Mary Alice Theiler
United States Magistrate Judge