UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES ANTHONY WILLIAMS,

                Plaintiff,

  v.

BRUCE C GAGE, et al.,

                Defendants.

Case No. C18-0218-JCC-MAT

ORDER

## I.    INTRODUCTION

On August 26, 2020, the Court deferred ruling on portions of two motions Plaintiff had filed at Docket 130 and Docket 131 related to his access to his legal property and legal research materials. (Dkt. 137 (8/26/2020 Order) at 5-7.) The Court ordered the parties to each file their own status report regarding these issues by September 11, 2020, which they did. (*See id.*; Dkt. 145 (Pl's Report); Dkt. 146 (Def's Report).) Plaintiff also filed three other motions that are now ripe: "Motion to Add Supplemental Group of Exhibits" (Dkt. 139); "Motion to Request Court to Send Plaintiff Copies of Documents" (Dkt. 141); and "Motion for Leave to File Over-Length Motions and Briefs" (Dkt. 144).[1] Having considered these submissions, the balance of the record, and the

---

[1] Plaintiff has filed a second motion titled "Motion for Leave to File Over-Length Motions and Briefs," which is noted for October 2, 2020. (Dkt. 149.) The Court will rule on this motion after it is ripe.

ORDER - 1

governing law, the Court GRANTS in part and DENIES in part Plaintiff's motions, as explained below.

## II. DISCUSSION

A. Motion to File Overlength Status Report

Plaintiff's request to file an over-length status report (Dkt. 144) is GRANTED. The Court will accept the overlength status report Plaintiff filed at Docket 145.

B. "Motion to Add Supplemental Group of Exhibits"

Plaintiff's "Motion to Add Supplemental Group of Exhibits" (Dkt. 139) is GRANTED in part and DENIED in part. Plaintiff's request that the Court accept the additional evidence attached to the motion (*id.* at 1) is GRANTED. Plaintiff's request that the Court appoint counsel because he has untreated ADHD and therefore cannot represent himself (*id.* at 12) is DENIED. The Court most recently denied a request for counsel by Plaintiff on August 26, 2020, less than one month ago. (Dkt. 137 at 8-9.) In doing so, the Court took into account Plaintiff's mental health challenges. (*See id.*) Plaintiff's renewed request does not warrant a different conclusion.

C. "Motion to Request Court to Send Plaintiff Copies of Documents"

Plaintiff's "Motion to Request Court to Send Plaintiff Copies of Documents" (Dkt. 141) is GRANTED in part and DENIED in part as follows:

(1) Plaintiff's request for a copy of Docket 123, the declaration of Patty Willoughby that Defendants filed in support of their motion for summary judgment and which Plaintiff maintains he never received (Dkt. 141 at 7), is GRANTED.

(2) Plaintiff's request for copies of Docket 135 and Docket 136 (Dkt. 141 at 7) is DENIED as moot. Plaintiff has indicated that he has received these documents. (*See* Dkt. 145 at 7.)

ORDER - 2

(3)  Plaintiff's request for a copy of Docket 133 (Dkt. 141 at 7-8) is DENIED. Plaintiff filed Docket 133 electronically and thus should have a copy of his own motion. Furthermore, Plaintiff states that he needs a copy of this motion so he can use it in support of his motion for appointment of counsel, but the Court has already denied this request, as explained above.

D.  Filing Difficulties

In his status report, Plaintiff claims staff at the Washington Corrections Center ("WCC") where he is currently housed have sabotaged the documents he has attempted to file with the Court by either failing to e-file all of the pages or opening his outgoing mail and removing pages before mailing his documents to the Court.[2] (*See* Dkt. 145 at 1-9.) Specifically, Plaintiff states that he mailed 140 pages of exhibits in support of his motion at Docket 130, but these exhibits never made it to the Court. (*Id.* at 1-2.) However, Plaintiff later filed the missing exhibits along with Docket 131. (*See* Dkt. 131 at 24.) Plaintiff also alleges that WCC Law Librarian John Thompson removed pages from Docket 131 (*id.* at 2), but the Court has received all 92 pages of Plaintiff's motion and 20 exhibits.[3] (*See* Dkt. 131.)

Plaintiff further alleges that on August 5, 2020, he gave Mr. Thompson 66 pages including 11 exhibits to scan to the Court, but the Court only received 43 pages, which were filed as Docket 133. (*Id.* at 4.) Docket 133 includes all 14 pages of Plaintiff's motion and Exhibits 1 - 7. It does not appear that the Court received Exhibits 8-11 at that time. According to Plaintiff's motion, these include kites Plaintiff sent to Mr. Thompson on July 21 and July 27, 2020, asking him to scan a document to the Court (Exhibits 8 and 9) and two declarations from Plaintiff about Mr.

---

[2] Plaintiff recounts a number of missing documents that do not have to do with this action, which the Court will not discuss herein.

[3] When a prisoner's submissions are scanned into CM/ECF, each exhibit is not filed separately. Thus, although CM/ECF indicates that there are only six exhibits to Docket 131, those documents contain all 20 of the exhibits Plaintiff submitted.

ORDER - 3

Thompson's refusal to scan documents to the court (Exhibits 10 and 11). Plaintiff later refiled Exhibits 10 and 11. (Dkt. 140 at 2-3.)

Plaintiff next claims that on August 21, 2020, he gave a 171-page reply in support of his motions at Docket 130 and Docket 131 to Sergeant Fisk to mail to the Court, but his reply never arrived at the Court. (Dkt. 145 at 4.) The same day, he also mailed a 66-page document to the Court, which was filed at Docket 139. The Court has never received the 171-page document Plaintiff describes.

Plaintiff further alleges that on August 25, 2020, he mailed to the Court a 10-page motion asking for copies of two declarations that he later received. (*See* Dkt. 145 at 7.) On August 31, 2020, the Court received the motion Plaintiff describes, and it does not appear that any pages are missing. (Dkt. 141.)

Plaintiff asserts that on August 31, 2020, he gave Sergeant Fisk a 393-page "Motion to File an Overlength Motion" to mail to the Court, which included 42 pages of briefing and 351 pages of exhibits. (Dkt. 145 at 8-10.) According to Plaintiff, his motion requested clarification on some points in his complaint and in Karie Rainer's declaration at Docket 124. (Dkt. 145 at 8.) On September 11, 2020, the Court received the submission Plaintiff describes. (Dkt. 149.) The Court received all 42 pages of briefing, and all 17 exhibits that Plaintiff referenced in his motion, as well as a few other exhibits not referenced in the motion.

Finally, Plaintiff wrote on the first page of his status report that he was submitting exactly 216 pages and if any pages were missing Mr. Thompson stole them. (Dkt. 145 at 1.) Plaintiff also interspersed his exhibits with his status report so that it would be obvious if any pages were missing. (*See generally* Dkt. 145.) The Court received up to page 160 of the 215 pages Plaintiff alleges he submitted to Mr. Thompson. (*See* Dkt. 145-4 at 14.)

ORDER - 4

The Court is troubled by the filing difficulties Plaintiff appears to be having. Nevertheless, while Plaintiff blames Mr. Thompson and other WCC staff for the missing pages, he does not support his suspicions with evidence, and based on the current record, it appears more likely to the Court that DOC staff are *not* responsible for intentionally interfering with Plaintiff's submissions. Furthermore, at least some of the documents Plaintiff expressed concern about appear to have been properly filed, and he has resubmitted some of the missing exhibits. Taking as true Plaintiff's allegations regarding the length and number of documents he submitted for filing, the primary documents the Court is missing are his reply in support of Docket 130 and Docket 131, and the last 55 pages of his status report. As Plaintiff himself recognizes, he often has difficulty focusing, repeats himself, and goes on tangents in his submissions to the Court. Thus, the Court cannot assume that the missing documents included relevant information that Plaintiff has not already presented to the Court. Accordingly, the Court will proceed to rule on Docket 130 and Docket 131 in this Order. If Plaintiff believes the Court has not received information that is relevant to its decision and that might result in a different conclusion, he may submit such information to the Court within 14 days of the date of this order, and the Court will reconsider the decision herein.[4]

(4)   Plaintiff's Access to His Legal Property

As the Court previously noted, Plaintiff's ability to access his legal property has been an ongoing issue throughout this litigation. (Dkt. 137 at 2.) In March 2020, the Honorable John C. Coughenour directed Plaintiff to follow the proper channels within the Washington State Department of Corrections ("DOC") to access his legal property. (Dkt. 109 (3/2/2020 Order) at 1.) Judge Coughenour encouraged Defendants to ensure Plaintiff knows how he can obtain permission to inventory his legal property so he can properly request access to his stored documents. (*Id.*)

---

[4] In the future, if Plaintiff believes the Court did not receive all of his submissions, he should inform the Court, to the best of his ability, what information was missing so the Court can determine whether it is relevant.

In Docket 130, Plaintiff alleges that Defendants and their agents have systematically stripped him of all court documents. (Dkt. 130 at 2.) Plaintiff claims that he has between nine and fourteen boxes of legal property in storage at the Washington Corrections Center ("WCC") where he is currently housed, but WCC staff have not allowed him to access any of it even though he has sent multiple kites and followed DOC protocol. (*Id.* at 16, 20.) Plaintiff also claims that Defendants confiscated his copy of the complaint in this action, as well as the discovery Defendants' counsel produced to him. (*Id.* at 19.) Plaintiff asks the Court to order the DOC to give him all of his legal property. (*Id.* at 22.)

In Docket 131, Plaintiff recounts some of the history of his difficulties gaining access to his legal property. (Dkt. 131 at 2-10.) He complains that the Court denied as moot his motion to have Defendants transfer all of his legal property to him in the WCC-IMU, arguing that Defendants had his property sent to the WCC but not directly to his cell as he requested. (*Id.* at 17.) Plaintiff reasserts his claim in Docket 130 that he has followed the proper procedures to access his legal property but has been denied. (*Id.* at 22.) He explains that inmates must inventory their stored legal property, but he has been denied an opportunity to do so. (*See id.* at 43-46.) He asserts that it would take him a very long time to create an index because of how many documents he has, and he claims the DOC's procedures effectively prevent him from accessing his stored legal property. (*See id.* at 43-46.) He also claims that DOC staff shuffle inmates' documents, further preventing inmates from accessing their property. (*Id.* at 46.) Plaintiff asks the Court (or counsel for Defendants) to (a) send him a copy of his complaint and a copy of Defendants' discovery materials; (b) order Defendants' agents to allow him to inventory his legal property boxes and retrieve the documents relevant to this case; and (c) order Defendants' agents to allow him access to his legal property boxes. (*See id.* at 75-78, 80-81.)

Plaintiff also submits several of his own declarations. (*See* Dkt. 131-6.) He attests that "[D]efendants have stolen or refuse to return to me my complaint and that they have placed it in my 9-14 boxes of documents which they are keeping from me . . . ." (*Id.* at 2.) Plaintiff attests that Defendants have also taken all of his discovery documents and legal research, placed these documents in his stored boxes, and refused to return them to him. (*Id.* at 8.) Finally, he attests that he cannot respond to Defendants' motion for summary judgment because he no longer remembers the detail of the claims he made in his complaint, he does not have Defendants' discovery documents, and he does not have access to caselaw authorities. (*Id.* at 9.)

In response, Defendants submitted the declarations of Plaintiff's WCC Classification Counselor, Chad Hostetler, and the WCC's law librarian, John Thompson.[5] (Dkt. 135 (Hostetler Decl.); Dkt. 136 (1st Thompson Decl.).) Mr. Hostetler and Mr. Thompson attest to the following. To maintain safety and security, an inmate like Plaintiff who is in restricted housing is permitted to have one 10" x 12" x 18" box of legal documents/paper in his cell unless he obtains permission from the Superintendent to keep two boxes. (Dkt. 135 ¶ 3 (citing DOC Policy 320.255).) If an inmate needs access to additional materials that he has in storage, he may submit a kite to the property officer and ask that one of his in-cell boxes be swapped out for one of his stored boxes. (*Id.*; Dkt. 136 ¶ 3.) Inmates are expected to label and keep organized their legal property. (Dkt. 136 ¶ 4.) This allows staff to determine which property qualifies as legal property and allows inmates to easily retrieve their legal property for a particular case. (*Id.*)

According to Mr. Hostetler and Mr. Thompson, Plaintiff currently has two boxes of legal property in his cell and a number of other boxes in the IMU storage. (Dkt. 135 ¶ 3; Dkt. 136 ¶ 7.) Plaintiff has repeatedly asked to have all his property boxes in his cell at one time, claiming he

---

[5] Neither declarant is a defendant in this action.

ORDER - 7

1  needs all the boxes at once because they are disorganized. (Dkt. 135 ¶ 5.) According to Mr.
2  Hostetler, Plaintiff's request cannot be accommodated because it violates DOC policy, there is
3  insufficient space in his cell for all his boxes, there are insufficient resources to move and search
4  his many boxes, other individuals are not afforded this accommodation, and it would create safety
5  and security issues as the boxes could be used to barricade the door or block a window. (*Id.* ¶ 5.)
6  Nevertheless, although inmates are expected to keep their property organized, WCC-IMU "staff
7  have discussed a plan and are working to allow Mr. Williams the opportunity to go through and
8  organize his property in a secured room other than his cell." (*Id.*) Mr. Hostetler hopes this will
9  allow Plaintiff "to better know what legal property he has so that he can request specific boxes to
10 have in his cell." (*Id.*)

11          After reviewing this evidence, the Court denied Plaintiff's request that he be allowed access
12 in his cell to all his boxes of legal property, noting that this would violate DOC policy and pose a
13 security risk, and deferred ruling on the remainder of Plaintiff's requests related to accessing his
14 legal property, noting that WCC-IMU staff were working to implement a plan that would allow
15 Plaintiff to review his stored property so he could ask for specific boxes to be brought to his cell
16 but as of the date of Mr. Hostetler's and Mr. Thompson's declarations, the plan had not yet been
17 implemented. (Dkt. 137 at 5.) The Court thus ordered the parties to file status reports regarding
18 Plaintiff's access to his legal property, addressing the steps WCC-IMU staff have taken to assist
19 Plaintiff with organizing and accessing his stored property, the steps Plaintiff has taken to comply
20 with DOC policies and/or WCC-IMU staff requests regarding accessing his stored property, any
21 additional steps Plaintiff must take to comply with the relevant DOC policies and/or WCC-IMU
22 staff requests, and any other relevant information. (*Id.* at 5-6.) The Court appreciated the efforts
23 WCC-IMU staff had taken thus far and stated its expectation that the parties continue to act in

ORDER - 8

good faith and in accordance with DOC policies to facilitate Plaintiff's reasonable access to his stored legal materials that are relevant to this lawsuit. (*Id.* at 6.)

The parties' status reports indicate that Plaintiff had an opportunity to review his legal property on August 6, 2020. (Dkt. 145-4 at 1; Dkt. 147 (French Decl.) ¶ 8.) Plaintiff was placed in a holding cell with all of his legal boxes and spent over three hours going through his property. (Dkt. 147 ¶ 8.) According to Plaintiff, his legal documents had been "hopelessly shuffled like a deck of cards." (Dkt. 145-4 at 1.) He states that he could not "find anything useful" but brought one box back to his cell and was able to inventory it. (*Id.*) Plaintiff states that he submitted a kite the same day asking for another opportunity to look through the boxes. (*Id.*)

According to Douglas French, the WCC-IMU Correctional Unit Supervisor ("CUS"), Plaintiff did not submit a request to the property officer until August 25, 2020. (Dkt. 147 ¶ 9.) As of September 10, 2020, WCC staff had not been able to grant Plaintiff's request because of his own behavior. (*See id.* ¶¶ 9, 11-13.) On August 17, 2020, Plaintiff received three serious infractions for destroying a telephone, threatening staff, and discriminatory harassment, which resulted in a level demotion. (*Id.* ¶ 5.) On August 19, 2020, he received a negative behavior observation for yelling profanities at an education staff member while she was walking the tier. (*Id.*) On August 27, 2020, Plaintiff received another negative behavior observation for attempting to throw food at staff through the cuff port and threatening staff. (*Id.*) On August 31, 2020, he smeared feces all around his door and refused to clean up and come out of his cell until 5:00 a.m. the following morning, when he finally complied. (*Id.*) This incident resulted in additional infractions. (*Id.*) On September 1, 2020, Plaintiff again smeared feces. (*Id.* ¶ 6.) Mr. Hostetler reported that on that day, he was walking the tier when he smelled feces coming from Plaintiff's cell. (*Id.*) He asked Plaintiff if he was okay and if he was smearing feces. (*Id.*) Plaintiff responded with abusive language and

ORDER - 9

1 threats. (*Id.*) Mr. Hostetler was planning on asking Plaintiff about his status regarding his legal
2 papers and the law library, but he was not able to get a word in. (*Id.*) In addition to these instances,
3 Plaintiff has continued to threaten staff and cover his window, which is against DOC policy. (*Id.*
4 ¶ 5.) Since September 1, 2020, Plaintiff's behavior has generally improved, although he acted out
5 verbally towards Mr. Thompson on September 10, 2020. (*Id.* ¶ 7.)

6       CUS French attests that WCC-IMU staff "will continue to assist in allowing [Plaintiff] to
7 organize his several legal boxes as long as his behavior is appropriate and does not risk safety and
8 security of the unit and its staff." (*Id.* ¶ 9.) However, Plaintiff's "persistent verbal threats, feces
9 smearing, and violent and volatile behavior makes it unsafe and unsanitary for unit staff to move
10 him to the law library or to a place where he can review his legal property." (*Id.* ¶ 12.) CUS French
11 further attests, "In order for Mr. Williams's behavior to be deemed appropriate to . . . be provided
12 another opportunity to organize his legal property, he will need to abstain from smearing feces and
13 verbalize a prosocial intent to receive assistance." (*Id.*) In addition, CUS French states that if
14 Plaintiff is compliant with his next training session with Mr. Thompson, which was scheduled for
15 September 16, 2020, WCC staff will schedule him for another opportunity to review his legal
16 property. (*Id.*)

17       Based on the parties' submissions, the Court concludes that WCC-IMU staff are providing
18 Plaintiff timely and appropriate access to his legal property while also ensuring the safe operation
19 of the unit. Plaintiff cannot expect to be permitted to review all of his legal property in a holding
20 cell if he has recently engaged in inappropriate behavior, and the Court will not order Defendants
21 to risk the safety and security of the institution to provide Plaintiff with such access. While Plaintiff
22 waits for WCC-IMU staff to be able to arrange another opportunity for him to review all of his
23 legal property at once, Plaintiff should submit a kite to the IMU property officer asking to trade

one of the boxes of legal property in his cell for one of his boxes in storage. **Given the upcoming deadline for Plaintiff to respond to Defendants' motion for summary judgment, Plaintiff should focus all of his efforts on locating and organizing the documents that are relevant to this action, rather than attempting to inventory all of his boxes of property at this time.** Once Plaintiff has gone through the documents in one box, he should ask to exchange the box for another that is in storage. If Plaintiff's behavior allows for another opportunity to review all of his legal property at one time, Plaintiff should again focus his efforts on locating and organizing the documents that are relevant to this case.[6]

Although it appears Plaintiff should be able to locate the copy of his complaint in this action that is among his stored property, the Court GRANTS his request for a copy of his complaint (Dkt. 131) in order to avoid further delay in the briefing on Defendants' motion for summary judgment. Because the Court does not have access to Defendants' discovery responses, the Court DENIES Plaintiff's request for copies of these documents. (*Id.*) Plaintiff should focus on locating these documents in his stored property. The Court further DENIES Plaintiff's remaining requests related to his property in Docket 130 and Docket 131.

E.       Plaintiff's Access to Legal Research Materials

Plaintiff alleges that Defendants and their agents are preventing him from accessing legal research materials. (*See* Dkt. 130 at 4.) Plaintiff explains that inmates in solitary confinement must conduct legal research on computers, but he is computer illiterate and DOC staff have refused to sit down and teach him how to use a computer and conduct legal research, which he believes he could learn if provided some instruction. (*Id.* at 4.) Plaintiff also claims that he is only allowed 1-2 hours of access to a computer every 30 to 60 days, which is insufficient for his needs. (*Id.* at 6.)

---

[6] If any of these directions to Plaintiff do not comply with DOC policies or procedures, counsel for Defendants should notify the Court immediately.

1  Plaintiff asks the Court to order Defendants' agents to allow him adequate access to caselaw by
2  providing him with printed caselaw from the law library, indexes of caselaw by topic, law books,
3  instruction on how to use the legal research computer, and adequate time on the law library
4  computer. (*See* Dkt. 131 at 80.)

5  Defendants responded to these claims with the following evidence from Mr. Hostetler and
6  Mr. Thompson. Inmates in the WCC-IMU have access to the IMU law library, which has two legal
7  computers with access to the Lexis Nexis legal database, DOC policies, and WCC Operational
8  Memoranda, among other resources. (Dkt. 135 ¶ 4; Dkt. 136 ¶ 5.) To access the law library, an
9  inmate must send a kite to the IMU Sergeant, who will add the individual to the law library
10 clipboard. (Dkt. 135 ¶ 4.) Inmates may access the law library for up to four hours per week. (Dkt.
11 135 ¶ 4.) Plaintiff has submitted a number of kites to Mr. Thompson requesting law library access,
12 but library access is managed and scheduled by IMU staff, not Mr. Thompson. (Dkt. 136 ¶ 8.)
13 Plaintiff has only filed one proper request to access the law library, and he was provided access on
14 April 6, 2020. (Dkt. 135 ¶ 4.) Plaintiff also submitted kites to Mr. Thompson asking for information
15 regarding the library computer; in response, Mr. Thompson sent him materials regarding the Lexis
16 Nexis database. (Dkt. 136 ¶ 8.) Mr. Thompson spoke with Plaintiff in person, who reported he
17 does not know how to use a computer; Mr. Thompson asked if there was any caselaw Plaintiff
18 wished to have printed. (*Id.*) Mr. Thompson also intended to work with Plaintiff one-on-one to
19 assist him with becoming familiar with a computer. (*Id.*) Mr. Thompson does not have much free
20 time but believed he could work with Plaintiff for 30 minutes a week for a limited period of time.
21 (*Id.*) Mr. Thompson and IMU staff were communicating to develop a plan to assist Plaintiff in this
22 way. (*Id.*)

23

After reviewing these submissions, the Court deferred ruling on Plaintiff's motions regarding access to the law library and directed the parties to address this issue in their status reports. (Dkt. 137 at 7.) The parties' status reports establish the following. Mr. Thompson was unable to meet with Plaintiff for computer training on August 26, 2020, as scheduled because he was unexpectedly out of the office. (Dkt. 148 (2nd Thompson Decl.) ¶ 3.) On September 2, 2020, Mr. Thompson went to Plaintiff's unit but was unable to assist him because he had been smearing feces. (*Id.*) Mr. Williams returned to Plaintiff's unit the following week on September 9, 2020, at 11:30 a.m.[7] (*Id.* ¶ 4.) According to Mr. Thompson, he asked Plaintiff if Plaintiff wanted help learning how to use Lexis Nexus. (*Id.*) Plaintiff responded by asking whether Mr. Thompson could come by the next day and scan Plaintiff's status report to the Court. (Dkt. 145-1 at 56.) Mr. Thompson responded that he would be at a different prison the following day but that he could do it that day, September 9, 2020. (Dkt. 148 ¶ 4; *see also* Dkt. 145-1 at 56.) Mr. Thompson then asked Plaintiff again if he wanted to use the computer. (Dkt. 148 ¶ 4; Dkt. 145-1 at 56.) Plaintiff said he did but that he needed to finish his legal papers and wanted to receive computer instruction after. (Dkt. 148 ¶ 4; Dkt. 145-1 at 56.) Mr. Thompson could not accommodate this request because of his other commitments. (Dkt. 148 ¶ 4; Dkt. 145-1 at 56.) According to Plaintiff, Mr. Thompson gave him the option of scanning the status report *or* providing computer instruction and thus refused to follow through with the promise of assistance. (Dkt. 145-1 at 57.) According to Mr. Thompson, he told Plaintiff he would be available to help Plaintiff the following Wednesday, September 16, 2020, at the agreed upon time of 11:30 a.m. (Dkt. 148 ¶ 4.)

Mr. Thompson also attests that he does not recall receiving any requests form Plaintiff to print off any legal materials for him in the recent past, and thus he has not provided any materials.

---

[7] Plaintiff's status report states that Mr. Thompson arrived at Plaintiff's cell on September 10, 2020 (Dkt. 145 at 51), but he filed his status report on September 9, 2020, so it appears he was mistaken as to the date.

(Dkt. 148 ¶ 5.) He states that on September 10, 2020, he asked Plaintiff twice if Plaintiff needed any photocopies or printouts, and he stated he did not. (*Id.*) In his status report, Plaintiff states that he submitted three requests to use the law library, was able to use it twice, and has been waiting for several months to use it again. (Dkt. 145-1 at 61.) Plaintiff also states that he has sent Mr. Thompson numerous forms requesting case law and books since 2018, which he included as exhibits to one of the submissions that did not make it to the Court. (Dkt. 145-1 at 62.)

At this time, the Court is concerned with Plaintiff's *present* ability to access legal research materials so he can respond to Defendants' motion for summary judgment, not with the difficulties Plaintiff has encountered in the past. Based on the parties' status reports, it appears that facility staff are acting in good faith to provide Plaintiff with opportunities to access legal research materials, but Plaintiff has not taken advantage of the support they are offering. While the Court is sympathetic to the difficulties Plaintiff faces, Plaintiff must focus on maintaining appropriate behavior, accepting the resources that are offered to him (i.e., meeting with Mr. Thompson during their regularly scheduled meeting times and requesting printed materials relevant to responding to the summary judgment motion), and following the proper channels to request other resources (i.e., Plaintiff must submit a kite to the appropriate IMU staff member to request law library access, not to Mr. Thompson) so that he can prepare a response to Defendants' motion for summary judgment. Given the efforts staff have taken, particularly Mr. Thompson, and the continued availability of resources for Plaintiff to take advantage of, the Court will DENY Plaintiff's requests related to access to legal materials. (*See* Dkts. 130, 131.)

### III.    CONCLUSION

To summarize, the Court: (1) GRANTS Docket 144; (2) DENIES Docket 130; (3) GRANTS in part and DENIES in part Dockets 131, 139, and 141; and (4) DIRECTS the Clerk to

1  send Plaintiff copies of his complaint and the exhibits thereto (Dkts. 11, 11-1, 11-2) and the
2  declaration of Patty Willoughby (Dkt. 123), and to send copies of this order to the parties and to
3  the Honorable John C. Coughenour.

4        Dated this <u>22nd</u> day of September, 2020.

                                        Mary Alice Theiler
                                        United States Magistrate Judge

ORDER - 15